**ANNEX "A" (DETAILS OF VESSEL OR VESSELS) TO**
**THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)**
**STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"**

Date of Agreement:
**09/01/06**
Name of Vessel(s):
**MT Simphony M**
Particulars of Vessel(s):
**Built: 1983, by Asakava Ship Building Japan**
**Panama Flag**
**Registered in Valletta, Malta**
**Call Sign: 3FSM9**
**IMO Nr.: 8216681**
**Class: N.K.K**
**GT/NT: 6,481/3,624**
**DWT: 10,885 MT**
**LOA: 123.63m, Beam: 18.20m**



Printed by BIMCO's Idea

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**ANNEX "B" (DETAILS OF CREW) TO**
**THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)**
**STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"**

Date of Agreement:
**09/01/06**
Details of Crew:

| Numbers | Rank | Nationality |
|---|---|---|
| 1 | MASTER | GREEK |
| 1 | CH.OFFICER | GREEK |
| 1 | 2ND MATE | RUSSIAN |
| 1 | 3RD MATE | RUSSIAN |
| 1 | CH. ENGINEER | GREEK |
| 1 | 2ND ENGINEER | GREEK |
| 1 | 3RD ENGINEER | RUSSIAN |
| 1 | 4TH ENGINEER | RUSSIAN |
| 1 | | |
| 1 | EL/CIAN | RUSSIAN |
| 1 | BOSUN | RUSSIAN |
| 1 | PUMPMAN | RUSSIAN |
| 1 | A.B. | RUSSIAN |
| 1 | A.B. | RUSSIAN |
| 1 | A.B. | RUSSIAN |
| 1 | O.S | RUSSIAN |
| 1 | MOTORMAN | RUSSIAN |
| 1 | MOTORMAN | RUSSIAN |
| 1 | MOTORMAN | RUSSIAN |
| 1 | FITTER | RUSSIAN |
| 1 | COOK | RUSSIAN |
| | AS.STEWARD | RUSSIAN |

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



ANNEX "C" (BUDGET) TO
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

Date of Agreement:
09/01/06
Managers' Budget for the first year with effect from the Commencement Date of this Agreement:

| | |
|---|---|
| CREW WAGES | $930,000 |
| MARINE INSURANCES | $45,000 |
| P&I AND DEFENSE | $85,000 |
| STORES (DECK, ENGINE, CABIN, BONDED | $90,000 |
| REPAIRS / MAINTENANCE | $100,000 |
| CREW REPLACEMENT AND OTHER EXPENSES INCLUDING MEDICAL | $30,000 |
| VICTUALLING | $60,000 |
| FLAG EXPENSES | $10,000 |
| SPARES | $70,000 |
| RADIO | $15,000 |
| GENERAL SUPPLY EXPENSES, OPA 90, VESSELS INSPECTIONS | $10,000 |
| LUBRICANTS | $40,000 |
| MANAGEMENT | $250,000 |
| UNFORSEEN | $10,000 |
| | |
| TOTAL | $1,745,000 |

In addition to the above the Voyage expenses must be added.

P&I DEDUCTIBLES
CARGO CLAIMS              $ 15,650.00 EACH CARGO VOYAGE
CREW ILLNESS             $  5,250.00 PER PORT
CREW INJURY/LOSS OF LIFE  $  5,250.00 PER PERSON PER PORT
ALL OTHER CLAIMS         $  5,250.00 ANY ONE ACCIDENT OR OCCURANCE

FD&D DEDUCTIBLES         $ 1,000.00 EACH DISPUTE

INSURANCE POLICY COVER
　　H&M INSURED VALUE      $ 5 MILLION
　　INCREASED VALUE        $ 2 MILLION

DEDUCTIBLE ON H&M INS COVER ($ 5 MILLLION)  $ 100,000

VESSEL INSURED FOR WAR RISK WITH LLOYDS
　　H&M INSURANCE          $ 5 MILLION
　　INCREASED VALUE        $ 2 MILLION

All figures about and without guarantee

Printed by BIMCO's Idea

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

ANNEX "D" (ASSOCIATED VESSELS) TO
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

NOTE: PARTIES SHOULD BE AWARE THAT BY COMPLETING THIS ANNEX "D"
THEY WILL BE SUBJECT TO THE PROVISIONS OF SUB-CLAUSE 18.1(i) OF THIS
AGREEMENT.

Date of Agreement:
09/01/06
Details of Associated Vessels:

MT Monte Rosso
Built 1987 by Santierul Naval Constanta
Dwt: 88,850 MT
IMO Nr: 8513625

MT Monte Verde
Built 1980 by Hitachi Zosen
Dwt: 86,993 MT
IMO Nr: 7602960

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



# EXHIBIT 2

*M. Ponte Rosso*

Approved by the International Ship Managers' Association (ISMA)

Approved by the Documentary Committee of The Japan Shipping Exchange Inc., Tokyo

Printed by BIMCO's Idea

**THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)**

STANDARD SHIP MANAGEMENT AGREEMENT

CODE NAME: "SHIPMAN 98"

Part I

| | |
|---|---|
| 1. Date of Agreement <br> 05/01/06 | |

| 2. Owners (name, place of registered office and law of registry) (Cl. 1) | 3. Managers (name, place of registered office and law of registry) (Cl. 1) |
|---|---|
| Name <br> **Solana Shipping Ltd** | Name <br> **Palomar Maritime Inc.** |
| Place of registered office <br> **Valletta, Malta** | Place of registered office <br> **Monrovia, 8 Broad Street, Liberia** |
| Law of registry <br> **Malta** | Law of registry <br> **Liberia** |

| 4. Day and year of commencement of Agreement (Cl. 2) <br> 05/01/06 | |
|---|---|

| 5. Crew Management (state "yes" or "no" as agreed) (Cl. 3.1) <br> YES | 6. Technical Management (state "yes" or "no" as agreed) (Cl. 3.2) <br> YES |
|---|---|
| 7. Commercial Management (state "yes" or "no" as agreed) (Cl. 3.3) <br> NO | 8. Insurance Arrangements (state "yes" or "no" as agreed) (Cl. 3.4) <br> YES |
| 9. Accounting Services (state "yes" or "no" as agreed) (Cl. 3.5) <br> YES | 10. Sale or purchase of the Vessel (state "yes" or "no" as agreed) (Cl. 3.6) <br> YES |
| 11. Provisions (state "yes" or "no" as agreed) (Cl. 3.7) <br> YES | 12. Bunkering (state "yes" or "no" as agreed) (Cl. 3.8) <br> NO , but cl. 3.8 to apply |
| 13. Chartering Services Period (only to be filled in if "yes" stated in Box 7) (Cl. 3.3(i)) <br> NO | 14. Owners' Insurance (state alternative (i), (ii) or (iii) of Cl. 6.3) <br> (ii) |
| 15. Annual Management Fee (state annual amount) (Cl. 8.1) <br> US$250,000 | 16. Severance Costs (state maximum amount) (Cl. 8.4(ii)) <br> All Severance costs as per Crew's Employment Agreement |
| 17. Day and year of termination of Agreement (Cl. 17) <br> 1 year after commencement | 18. Law and Arbitration (state alternative 19.1, 19.2 or 19.3; if 19.3 place of arbitration must be stated) (Cl. 19) <br> 19.1 |
| 19. Notices (state postal and cable address, telex and telefax number for serving notice and communication to the Owners) (Cl. 20) <br> Solana Shipping Ltd <br> c/o Spectrum Trading and Shipping (STS) Inc. <br> 31 Novinskiy Boulevard, Office 8068, Moscow. <br> Russia 123242 <br> Tel: +7 095 9814788  Fax:+7 095 9814769 Email: Tanker@spect.ru | 20. Notices (state postal and cable address, telex and telefax number for serving notice and communication to the Managers) (Cl. 20) <br> Palomar Maritime Inc. <br> Kantharou 1 & Akti Miaouli 75, 18537, Athens, Greece <br> Fax: +30 210 4280064, Tlx: 212939 REMI GR, <br> Email: Operations@Palomarmaritime.com |

It is mutually agreed between the party stated in Box 2 and the party stated in Box 3 that this Agreement consisting of PART I and PART II as well as Annexes "A" (Details of Vessel), "B" (Details of Crew), "C" (Budget) and "D" (Associated vessels) attached hereto, shall be performed subject to the conditions contained herein. In the event of a conflict of conditions, the provisions of PART I and Annexes "A", "B", "C" and "D" shall prevail over those of PART II to the extent of such conflict but no further.

| Signature(s) (Owners) | Signature(s) (Managers) |
|---|---|
| | |

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
## "SHIPMAN 98" Standard Ship Management Agreement

**✱ Definitions** 1
In this Agreement save where the context otherwise requires, 2
the following words and expressions shall have the meanings 3
hereby assigned to them. 4

*"Owners"* means the party identified in Box 2. 5
*"Managers"* means the party identified in Box 3. 6
*"Vessel"* means the vessel or vessels details of which are set 7
out in Annex "A" attached hereto. 8
*"Crew"* means the Master, officers and ratings of the numbers, 9
rank and nationality specified in Annex "B" attached hereto. 10
*"Crew Support Costs"* means all expenses of a general nature 11
which are not particularly referable to any individual vessel for 12
the time being managed by the Managers and which are incurred 13
by the Managers for the purpose of providing an efficient and 14
economic management service and, without prejudice to the 15
generality of the foregoing, shall include the cost of crew standby 16
pay, training schemes for officers and ratings, cadet training 17
schemes, sick pay, study pay, recruitment and interviews. 18
*"Severance Costs"* means the costs which the employers are 19
legally obliged to pay to or in respect of the Crew as a result of 20
the early termination of any employment contract for service on 21
the Vessel. 22
*"Crew Insurances"* means insurances against crew risks which 23
shall include but not be limited to death, sickness, repatriation, 24
injury, shipwreck unemployment indemnity and loss of personal 25
effects. 26
*"Management Services"* means the services specified in sub- 27
clauses 3.1 to 3.8 as indicated affirmatively in Boxes 5 to 12. 28
*"ISM Code"* means the International Management Code for the 29
Safe Operation of Ships and for Pollution Prevention as adopted 30
by the International Maritime Organization (IMO) by resolution 31
A.741(18) or any subsequent amendment thereto. 32
*"STCW 95"* means the International Convention on Standards 33
of Training, Certification and Watchkeeping for Seafarers, 1978, 34
as amended in 1995 or any subsequent amendment thereto. 35

**2. Appointment of Managers** 36
With effect from the day and year stated in Box 4 and continuing 37
unless and until terminated as provided herein, the Owners 38
hereby appoint the Managers and the Managers hereby agree 39
to act as the Managers of the Vessel. 40

**3. Basis of Agreement** 41
Subject to the terms and conditions herein provided, during the 42
period of this Agreement, the Managers shall carry out 43
Management Services in respect of the Vessel as agents for 44
and on behalf of the Owners. The Managers shall have the authority 45
to take such actions as they may from time to time in their absolute 46
discretion consider to be necessary to enable them to perform 47
this Agreement in accordance with sound ship management 48
practice. 49

**3.1 Crew Management** 50
*(only applicable if agreed according to Box 5)* 51
The Managers shall provide suitably qualified Crew for the Vessel 52
as required by the Owners in accordance with the STCW 95 53
requirements, provision of which includes but is not limited to 54
the following functions: 55
(i)   selecting and engaging the Vessel's Crew, including payroll 56
      arrangements, pension administration, and insurances for 57
      the Crew other than those mentioned in Clause 6; 58
(ii)  ensuring that the applicable requirements of the law of the 59
      flag of the Vessel are satisfied in respect of manning levels, 60
      rank, qualification and certification of the Crew and 61
      employment regulations including Crew's tax, social 62
      insurance, discipline and other requirements; 63
(iii) ensuring that all members of the Crew have passed a medical 64
      examination with a qualified doctor certifying that they are fit→ 65

for the duties for which they are engaged and are in possession 66
of valid medical certificates issued in accordance with 67
appropriate flag State requirements. In the absence of 68
applicable flag State requirements the medical certificate shall 69
be dated not more than three months prior to the respective 70
Crew members leaving their country of domicile and 71
maintained for the duration of their service on board the Vessel; 72
(iv)  ensuring that the Crew shall have a command of the English 73
      language of a sufficient standard to enable them to perform 74
      their duties safely; 75
(v)   arranging transportation of the Crew, including repatriation; 76
(vi)  training of the Crew and supervising their efficiency; 77
(vii) conducting union negotiations; 78
(viii)operating the Managers' drug and alcohol policy unless 79
      otherwise agreed. 80

**3.2 Technical Management** 81
*(only applicable if agreed according to Box 6)* 82
The Managers shall provide technical management which 83
includes, but is not limited to, the following functions: 84
(i)   provision of competent personnel to supervise the 85
      maintenance and general efficiency of the Vessel; 86
(ii)  arrangement and supervision of dry dockings, repairs, 87
      alterations and the upkeep of the Vessel to the standards 88
      required by the Owners provided that the Managers shall 89
      be entitled to incur the necessary expenditure to ensure 90
      that the Vessel will comply with the law of the flag of the 91
      Vessel and of the places where she trades, and all 92
      requirements and recommendations of the classification 93
      society; 94
(iii) arrangement of the supply of necessary stores, spares and 95
      lubricating oil; 96
(iv)  appointment of surveyors and technical consultants as the 97
      Managers may consider from time to time to be necessary; 98
(v)   development, implementation and maintenance of a Safety 99
      Management System (SMS) in accordance with the ISM 100
      Code (see sub-clauses 4.2 and 5.3); 101
(vi)  all aspects of ISPS compliance 101A

**3.3 Commercial Management** 102
*(only applicable if agreed according to Box 7)* 103
The Managers shall provide the commercial management of the 104
Vessel, as required by the Owners, which includes, but is not 105
limited to, the following functions: 106
~~(i)   providing chartering services in accordance with the Owners'~~ 107
~~instructions which include, but are not limited to, seeking~~ 108
~~and negotiating employment for the Vessel and the conclusion~~ 109
~~(including the execution thereof) of charter parties or other~~ 110
~~contracts relating to the employment of the Vessel. If such a~~ 111
~~contract exceeds the period stated in Box 13, consent thereto~~ 112
~~in writing shall first be obtained from the Owners;~~ 113
~~(ii)  arranging of the proper payment to Owners or their nominees~~ 114
~~of all hire and/or freight revenues or other moneys of~~ 115
~~whatsoever nature to which Owners may be entitled arising~~ 116
~~out of the employment of or otherwise in connection with the~~ 117
~~Vessel;~~ 118
~~(iii) providing voyage estimates and accounts and calculating of~~ 119
~~hire, freights, demurrage and/or despatch moneys due from~~ 120
~~or due to the charterers of the Vessel;~~ 121
~~(iv) issuing of voyage instructions;~~ 122
~~(v)  appointing agents;~~ 123
~~(vi) appointing stevedores;~~ 124
~~(vii)arranging surveys associated with the commercial operation~~ 125
~~of the Vessel.~~ 126

**3.4 Insurance Arrangements** 127
*(only applicable if agreed according to Box 8)* 128
The Managers shall arrange insurances in accordance with 129
Clause 6, on such the terms and conditions as the Owners shall 130
presently applicable to Sellers/Managers
have instructed or agreed in particular regarding conditions 131

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-
printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of
discrepancies between the original BIMCO approved document and this computer generated document



PART II
**"SHIPMAN 98" Standard Ship Management Agreement**

Including,
insured values, deductibles and franchises, etc.                    132

**3.5 Accounting Services**                                         133
(only applicable if agreed according to *Box 9*)                    134
The Managers shall:                                                 135
(i)  establish an accounting system which meets the                 136
     requirements of the Owners and provide regular accounting      137
     services, supply regular reports and records, such accounting  138
services to be provided by Moore Stephens and all costs to be for
owner's account
(ii) maintain the records of all costs and expenditure incurred     139
     as well as data necessary or proper for the settlement of      140
     accounts between the parties.                                  141

**3.6 Sale or Purchase of the Vessel**                              142
(only applicable if agreed according to *Box 10*)                   143
The Managers shall, in accordance with the Owners' instructions,    144
supervise the sale or purchase of the Vessel, including the         145
performance of any sale or purchase agreement, but not             146
negotiation of the same.                                            147

**3.7 Provisions** (only applicable if agreed according to *Box 11*) 148
The Managers shall arrange for the supply of provisions.            149

**3.8 Bunkering** (only applicable if agreed according to *Box 12*) 150
The Managers-Owners shall arrange for the provision of bunker fuel  151
of the
quality specified by the Owners suitable for the type of the Vessel's 152
engine as required for the Vessel's trade.

**4. Managers' Obligations**                                        153
4.1 The Managers undertake to use their best endeavours to          154
provide the agreed Management Services as agents for and on         155
behalf of the Owners in accordance with sound ship management       156
practice and to protect and promote the interests of the Owners in  157
all matters relating to the provision of services hereunder.        158
Provided, however, that the Managers in the performance of their    159
management responsibilities under this Agreement shall be entitled  160
to have regard to their overall responsibility in relation to all vessels 161
as may from time to time be entrusted to their management and       162
in particular, but without prejudice to the generality of the foregoing, 163
the Managers shall be entitled to allocate available supplies,      164
manpower and services in such manner as in the prevailing          165
circumstances the Managers in their absolute discretion consider    166
to be fair and reasonable.                                          167
4.2 Where the Managers are providing Technical Management           168
in accordance with sub-clause *3.2*, they shall procure that the    169
requirements of the law of the flag of the Vessel are satisfied and 170
they shall in particular be deemed to be the "Company" as defined   171
by the ISM Code, assuming the responsibility for the operation of   172
the Vessel and taking over the duties and responsibilities imposed  173
by the ISM Code when applicable.                                    174

**5. Owners' Obligations**                                          175
5.1 The Owners shall pay all sums due to the Managers punctually    176
in accordance with the terms of this Agreement.                     177
5.2 Where the Managers are providing Technical Management           178
in accordance with sub-clause *3.2*, the Owners shall:              179
(i)  procure that all officers and ratings supplied by them or on   180
     their behalf comply with the requirements of STCW 95;          181
(ii) instruct such officers and ratings to obey all reasonable orders 182
     of the Managers in connection with the operation of the        183
     Managers' safety management system.                            184
5.3 Where the Managers are not providing Technical Management       185
in accordance with sub-clause *3.2*, the Owners shall procure that  186
the requirements of the law of the flag of the Vessel are satisfied 187
and that they, or such other entity as may be appointed by them     188
and identified to the Managers, shall be deemed to be the           189
"Company" as defined by the ISM Code assuming the responsibility    190
for the operation of the Vessel and taking over the duties and      191

responsibilities imposed by the ISM Code when applicable.           192

**6. Insurance Policies**                                           193
The Owners shall procure, whether by instructing the Managers       194
under sub-clause *3.4* or otherwise, that throughout the period of  195
this Agreement:                                                     196
6.1 at the Owners' expense, the Vessel is insured for not less      197
than her sound market value or entered for her full gross tonnage,  198
as the case may be for:                                             199
(i)   usual hull and machinery marine risks (including crew         200
      negligence) and excess liabilities;                           201
(ii)  protection and indemnity risks (including pollution risks and  202
      Crew Insurances); and                                         203
(iii) war risks (including protection and indemnity and crew risks) 204
in accordance with the best practice of prudent owners of           205
vessels of a similar type to the Vessel, with first class insurance 206
companies, underwriters or associations ("the Owners'              207
insurances");                                                       208
6.2 all premiums and calls on the Owners' insurances are paid       209
promptly by their due date,                                         210
6.3 the Owners' insurances name the Managers and, subject           211
to underwriters' agreement, any third party designated by the       212
Managers as a joint assured, with full cover, with the Owners       213
obtaining cover in respect of each of the insurances specified in   214
sub-clause *6.1*:                                                   215
(i)   on terms whereby the Managers and any such third party        216
      are liable in respect of premiums or calls arising in connection 217
      with the Owners' insurances; or                               218
(ii)  if reasonably obtainable, on terms such that neither the      219
      Managers nor any such third party shall be under any          220
      liability in respect of premiums or calls arising in connection 221
      with the Owners' insurances; or                               222
(iii) on such other terms as may be agreed in writing.             223
indicate alternative (i), (ii) or (iii) in *Box 14*. If *Box 14* is left 224
blank then (i) applies.                                             225
6.4 written evidence is provided, to the reasonable satisfaction    226
of the Managers, of their compliance with their obligations under   227
*Clause 6* within a reasonable time of the commencement of          228
the Agreement, and of each renewal date and, if specifically        229
requested, of each payment date of the Owners' insurances.          230

**7. Income Collected and Expenses Paid on Behalf of Owners**       231
7.1 All moneys collected by the Managers under the terms of         232
this Agreement (other than moneys payable by the Owners to          233
the Managers) and any interest thereon shall be held to the         234
credit of the Owners in a separate bank account.                    235
7.2 All expenses incurred by the Managers under the terms           236
of this Agreement on behalf of the Owners (including expenses       237
as provided in *Clause 8*) may be debited against the Owners        238
in the account referred to under sub-clause *7.1* but shall in any  239
event remain payable by the Owners to the Managers on               240
demand.                                                             241

**8. Management Fee**                                               242
8.1 The Owners shall pay to the Managers for their services         243
as Managers under this Agreement an annual management              244
fee as stated in *Box 15* which shall be payable by equal           245
Monthly - instalments in advance, the first instalment being        246
payable on the commencement of this Agreement (see *Clause*         247
*2* and *Box 4*) and subsequent instalments being payable every     248
month.                                                              249
8.2 The management fee shall be subject to an annual review         250
on the anniversary date of the Agreement and the proposed           251
fee shall be presented in the annual budget referred to in sub-     252
clause *9.1*.                                                       253
8.3 The Managers shall, at no extra cost to the Owners, provide     254
their own office accommodation, office staff, facilities and         255
stationery. Without limiting the generality of *Clause 7* the Owners 256

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-
printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of
discrepancies between the original BIMCO approved document and this computer generated document.



PART II
"SHIPMAN 98" Standard Ship Management Agreement

shall reimburse the Managers for postage and communication 257
expenses, travelling expenses, and other out of pocket 258
expenses properly incurred by the Managers in pursuance of 259
the Management Services. 260
8.4 In the event of the appointment of the Managers being 261
terminated by the Owners or the Managers in accordance with 262
the provisions of Clauses 17 and 18 other than by reason of 263
default by the Managers, or if the Vessel is lost, sold or otherwise 264
disposed of, the "management fee" payable to the Managers 265
according to the provisions of sub-clause 8.1, shall continue to 266
be payable for a further period of three calendar months as 267
from the termination date. In addition, provided that the 268
Managers provide Crew for the Vessel in accordance with sub- 269
clause 3.1: 270
(i) the Owners shall continue to pay Crew Support Costs during 271
the said further period of three calendar months and 272
(ii) the Owners shall pay an equitable proportion of any all 273
Severance Costs which may materialize are actually incurred, 274
not exceeding
the amount stated in Box 18. 275
8.5 If the Owners decide to lay-up the Vessel whilst this 276
Agreement remains in force and such lay-up lasts for more 277
than three months, an appropriate reduction of the management 278
fee for the period exceeding three months until one month 279
before the Vessel is again put into service shall be mutually 280
agreed between the parties. 281
8.6 Unless otherwise agreed in writing all discounts and 282
commissions obtained by the Managers in the course of the 283
management of the Vessel shall be credited to the Owners. 284

9. Budgets and Management of Funds 285
9.1 The Managers shall present to the Owners annually a 286
budget for the following twelve months in such form as the 287
Owners require. The budget for the first year hereof is set out 288
in Annex "C" hereto. Subsequent annual budgets shall be 289
prepared by the Managers and submitted to the Owners not 290
less than three months before the anniversary date of the 291
commencement of this Agreement (see Clause 2 and Box 4). 292
9.2 The Owners shall indicate to the Managers their acceptance 293
and approval of the annual budget within one month week of 294
presentation and in the absence of any such indication the 295
Managers shall be entitled to assume that the Owners have 296
accepted the proposed budget. 297
9.3 Following the agreement of the budget, the Managers shall 298
prepare and present to the Owners their estimate of the working 299
capital requirement of the Vessel and the Managers shall each 300
month up-date this estimate The owners shall provide an amount 301
of US$250,000 to the Managers for the working capital
requirements of the vessel, which amount to be deposited in the
Managers' account. Based thereon, the Managers shall
each month request the Owners in writing for the funds required to 302
make up any deficit of the US$250,000 working capital deposit, as
when required,
to run the Vessel for the ensuing month, including the payment 303
of any occasional or extraordinary item of expenditure, such as 304
emergency repair costs, additional insurance premiums, bunkers 305
or provisions. Such funds shall be received by the Managers 306
within ten running three banking days days after the receipt by the 307
Owners of the
Managers' written or fax or telex or e-mail request and shall be held 308
to the credit of the
Owners in a separate bank account. 309
9.4 The Managers shall produce a comparison between 310
budgeted and actual income and expenditure of the Vessel in 311
such form as required by the Owners monthly or at such other 312
intervals as mutually agreed. 313
9.5 Notwithstanding anything contained herein to the contrary, 314
the Managers shall in no circumstances be required to use or 315
commit their own funds to finance the provision of the 316
Management Services. 317

10. Managers' Right to Sub-Contract 318
The Managers shall not have the right to sub-contract any of 319
their obligations hereunder, including those mentioned in sub- 320
clause 3.1, without the prior written consent of the Owners which 321
shall not be unreasonably withheld. In the event of such a sub- 322
contract the Managers shall remain fully liable for the due 323
performance of their obligations under this Agreement. 324

11. Responsibilities 325
11.1 Force Majeure - Neither the Owners nor the Managers 326
shall be under any liability for any failure to perform any of their 327
obligations hereunder by reason of any cause whatsoever of 328
any nature or kind beyond their reasonable control. 329
11.2 Liability to Owners - (i) Without prejudice to sub-clause 330
11.1, the Managers shall be under no liability whatsoever to the 331
Owners for any loss, damage, delay or expense of whatsoever 332
nature, whether direct or indirect, (including but not limited to 333
loss of profit arising out of or in connection with detention of or 334
delay to the Vessel) and howsoever arising in the course of 335
performance of the Management Services UNLESS same is 336
proved to have resulted solely from the negligence, gross 337
negligence or wilful default of the Managers or their employees, 338
or agents or sub-contractors employed by them in connection 339
with the Vessel, in which case (save where loss, damage, delay 340
or expense has resulted from the Managers' personal act or 341
omission committed with the intent to cause same or recklessly 342
and with knowledge that such loss, damage, delay or expense 343
would probably result) the Managers' liability for each incident 344
or series of incidents giving rise to a claim or claims shall never 345
exceed a total of ten times the annual management fee payable 346
hereunder. 347
(ii) Notwithstanding anything that may appear to the contrary in 348
this Agreement, the Managers shall not be liable for any of the 349
actions of the Crew, even if such actions are negligent, grossly 350
negligent or wilful, except only to the extent that they are shown 351
to have resulted from a failure by the Managers to discharge 352
their obligations under sub-clause 3.1, in which case their liability 353
shall be limited in accordance with the terms of this Clause 11. 354
11.3 Indemnity - Except to the extent and solely for the amount 355
therein set out that the Managers would be liable under sub- 356
clause 11.2, the Owners hereby undertake to keep the Managers 357
and their employees, agents and sub-contractors indemnified 358
and to hold them harmless against all actions, proceedings, 359
claims, demands or liabilities whatsoever or howsoever arising 360
which may be brought against them or incurred or suffered by 361
them arising out of or in connection with the performance of the 362
Agreement, and against and in respect of all costs, losses, 363
damages and expenses (including legal costs and expenses on 364
a full indemnity basis) which the Managers may suffer or incur 365
(either directly or indirectly) in the course of the performance of 366
this Agreement. 367
11.4 "Himalaya" - It is hereby expressly agreed that no 368
employee or agent of the Managers (including every sub- 369
contractor from time to time employed by the Managers) shall in 370
any circumstances whatsoever be under any liability whatsoever 371
to the Owners for any loss, damage or delay of whatsoever kind 372
arising or resulting directly or indirectly from any act, neglect or 373
default on his part while acting in the course of or in connection 374
with his employment and, without prejudice to the generality of 375
the foregoing provisions in this Clause 11, every exemption, 376
limitation, condition and liberty herein contained and every right, 377
exemption from liability, defence and immunity of whatsoever 378
nature applicable to the Managers or to which the Managers are 379
entitled hereunder shall also be available and shall extend to 380
protect every such employee or agent of the Managers acting 381
as aforesaid and for the purpose of all the foregoing provisions 382
of this Clause 11 the Managers are or shall be deemed to be 383
acting as agent or trustee on behalf of and for the benefit of all 384

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



**PART II**
**"SHIPMAN 98" Standard Ship Management Agreement**

persons who are or might be their servants or agents from time    385
to time (including sub-contractors as aforesaid) and all such    386
persons out to this extent be or be deemed to be parties to this    387
Agreement.    388

**12.Documentation**    389
Where the Managers are providing Technical Management in    390
accordance with sub-clause 3.2 and/or Crew Management in    391
accordance with sub-clause 3.1, they shall make available,    392
upon Owners' request, all documentation and records related    393
to the Safety Management System (SMS) and/or the Crew    394
which the Owners need in order to demonstrate compliance    395
with the ISM Code and STCW 95 or to defend a claim against    396
a third party.    397

**13.General Administration**    398
13.1  The Managers shall handle and settle all claims arising    399
out of the Management Services hereunder and keep the Owners    400
informed regarding any incident of which the Managers become    401
aware which gives or may give rise to claims or disputes involving    402
third parties.    403
13.2  The Managers shall, as instructed by the Owners, bring    404
or defend actions, suits or proceedings in connection with matters    405
entrusted to the Managers according to this Agreement.    406
13.3  The Managers shall also have power to obtain legal or    407
technical or other outside expert advice in relation to the handling    408
and settlement of claims and disputes or all other matters    409
affecting the interests of the Owners in respect of the Vessel.    410
13.4  The Owners shall arrange for the provision of any    411
necessary guarantee bond or other security.    412
13.5  Any costs reasonably incurred by the Managers in    413
carrying out their obligations according to Clause 13 shall be    414
reimbursed by the Owners.    415

**14.Auditing**    416
The Managers shall at all times maintain and keep true and    417
correct accounts and shall make the same available for inspection    418
and auditing by the Owners at such times as may be mutually    419
agreed. On the termination, for whatever reasons, of this    420
Agreement, the Managers shall release to the Owners, if so    421
requested, the originals where possible, or otherwise certified    422
copies, of all such accounts and all documents specifically relating    423
to the Vessel and her operation.    424

**15.Inspection of Vessel**    425
The Owners shall have the right at any time after giving    426
reasonable notice to the Managers to inspect the Vessel for any    427
reason they consider necessary.    428

**16.Compliance with Laws and Regulations**    429
The Managers will not do or permit to be done anything which    430
might cause any breach or infringement of the laws and    431
regulations of the Vessel's flag, or of the places where she trades.    432

**17.Duration of the Agreement**    433
This Agreement shall come into effect on the day and year stated    434
in Box 4 and shall continue until the date stated in Box 17.    435
However either party to have the right to terminate this agreement
by
~~Thereafter it shall continue until terminated by either party giving~~    436
to the other notice in writing, in which event the Managers shall    437
terminate upon the expiration of a period of two-three months from    438
the
date upon which such notice was given.    439

**18.Termination**    440
18.1 Owners' default    441
(i)  The Managers shall be entitled to terminate the Agreement    442
with immediate effect by notice in writing if any moneys    443
payable by the Owners under this Agreement and/or the    444

owners of any associated vessel, details of which are listed    445
in Annex "D", shall not have been received in the Managers'    446
nominated account within ten-five running days of receipt by    447
the Owners of the Managers written request or if the Vessel    448
is repossessed by the Mortgagees.    449
(ii)  If the Owners:    450
(a)  fail to meet their obligations under sub-clauses 5.2    451
and 5.3 of this Agreement for any reason within their    452
control, or    453
(b)  proceed with the employment of or continue to employ    454
the Vessel in the carriage of contraband, blockade    455
running, or in an unlawful trade, or on a voyage which    456
in the reasonable opinion of the Managers is unduly    457
hazardous or improper,    458
the Managers may give notice of the default to the Owners,    459
requiring them to remedy it as soon as practically possible.    460
In the event that the Owners fail to remedy it within a    461
reasonable time to the satisfaction of the Managers, the    462
Managers shall be entitled to terminate the Agreement    463
with immediate effect by notice in writing.    464

18.2  Managers' Default    465
If the Managers fail to meet their obligations under Clauses 3    466
and 4 of this Agreement for any reason within the control of the    467
Managers, the Owners may give notice to the Managers of the    468
default, requiring them to remedy it as soon as practically    469
possible. In the event that the Managers fail to remedy it within a    470
reasonable time to the satisfaction of the Owners, the Owners    471
shall be entitled to terminate the Agreement with immediate effect    472
by notice in writing.    473
18.3  Extraordinary Termination    474
This Agreement shall be deemed to be terminated in the case of    475
the sale of the Vessel or if the Vessel becomes a total loss or is    476
declared as a constructive or compromised or arranged total    477
loss or is requisitioned.    478
18.4  For the purpose of sub-clause 18.3 hereof    479
(i)   the date upon which the Vessel is to be treated as having    480
been sold or otherwise disposed of shall be the date on    481
which the Owners cease to be registered as Owners of    482
the Vessel;    483
(ii)  the Vessel shall not be deemed to be lost unless either    484
she has become an actual total loss or agreement has    485
been reached with her underwriters in respect of her    486
constructive, compromised or arranged total loss or if such    487
agreement with her underwriters is not reached it is    488
adjudged by a competent tribunal that a constructive loss    489
of the Vessel has occurred.    490
18.5  This Agreement shall terminate forthwith in the event of    491
an order being made or resolution passed for the winding up,    492
dissolution, liquidation or bankruptcy of either party (otherwise    493
than for the purpose of reconstruction or amalgamation) or if a    494
receiver is appointed, or if it suspends payment, ceases to carry    495
on business or makes any special arrangement or composition    496
with its creditors.    497
18.6  The termination of this Agreement shall be without    498
prejudice to all rights accrued due between the parties prior to    499
the date of termination.    500

**19.Law and Arbitration**    501
19.1 This Agreement shall be governed by and construed in    502
accordance with English law and any dispute arising out of or    503
in connection with this Agreement shall be referred to arbitration    504
in London in accordance with the Arbitration Act 1996 or    505
any statutory modification or re-enactment thereof save to    506
the extent necessary to give effect to the provisions of this    507
Clause.    508
The arbitration shall be conducted in accordance with the    509
London Maritime Arbitrators Association (LMAA) Terms    510
current at the time when the arbitration proceedings are    511
commenced.    512

This document is a computer generated ShIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to this form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



## PART II
## "SHIPMAN 98" Standard Ship Management Agreement

The reference shall be to three arbitrators. A party wishing 513
to refer a dispute to arbitration shall appoint its arbitrator 514
and send notice of such appointment in writing to the other 515
party requiring the other party to appoint its own arbitrator 516
within 14 calendar days of that notice and stating that it will 517
appoint its arbitrator as sole arbitrator unless the other party 518
appoints its own arbitrator and gives notice that it has done 519
so within the 14 days specified. If the other party does not 520
appoint its own arbitrator and give notice that it has done so 521
within the 14 days specified, the party referring a dispute to 522
arbitration may, without the requirement of any further prior 523
notice to the other party, appoint its arbitrator as sole 524
arbitrator and shall advise the other party accordingly. The 525
award of a sole arbitrator shall be binding on both parties 526
as if he had been appointed by agreement. 527
Nothing herein shall prevent the parties agreeing in writing 528
to vary these provisions to provide for the appointment of a 529
sole arbitrator. 530
In cases where neither the claim nor any counterclaim 531
exceeds the sum of USD50,000 (or such other sum as the 532
parties may agree) the arbitration shall be conducted in 533
accordance with the LMAA Small Claims Procedure current 534
at the time when the arbitration proceedings are commenced. 535
~~19.2 This Agreement shall be governed by and construed~~ 536
~~in accordance with Title 9 of the United States Code and~~ 537
~~the Maritime Law of the United States and any dispute~~ 538
~~arising out of in connection with this Agreement shall be~~ 539
~~refered to three persons at New York, one to be appointed~~ 540
~~by each of the parties hereto, and the third by the two so~~ 541
~~chosen; their decision or that of any two of them shall be~~ 542

~~final, and for the purposes of enforcing any award,~~ 543
~~judgement may be entered on an award by any court of~~ 544
~~competent jurisdiction. The proceedings shall be conducted~~ 545
~~in accordance with the rules of the Society of Maritime~~ 546
~~Arbitrators, Inc.~~ 547
~~In cases where neither the claim nor any counterclaim~~ 548
~~exceeds the sum of USD50,000 (or such other sum as the~~ 549
~~parties may agree) the arbitration shall be conducted in~~ 550
~~accordance with the Shortened Arbitration Procedure of the~~ 551
~~Society of Maritime Arbitrators, Inc. current at the time when~~ 552
~~the arbitration proceedings are commenced.~~ 553
~~19.3 This Agreement shall be governed by and construed~~ 554
~~in accordance with the laws of the place mutually agreed by~~ 555
~~the parties and any dispute arising out of in connection~~ 556
~~with this Agreement shall be referred to arbitration at a~~ 557
~~mutually agreed place, subject to the procedures applicable~~ 558
~~there.~~ 559
19.4 If Box 18 in Part I is not appropriately filled in, sub- 560
clause 19.1 of this Clause shall apply. 561

*Note: 19.1, 19.2 and 19.3 are alternatives; indicate* 562
*alternative agreed in Box 18.* 563

**20. Notices** 564
**20.1** Any notice to be given by either party to the other 565
party shall be in writing and may be sent by fax, telex, 566
registered or recorded mail or by personal service. 567
**20.2** The address of the Parties for service of such 568
communication shall be as stated in Boxes 18 and 20, 569
respectively. 570

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



ANNEX "A" (DETAILS OF VESSEL OR VESSELS) TO
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

Date of Agreement:
05/01/06
Name of Vessel(s):
MT Monte Rosso
Particulars of Vessel(s):
Built: 1987, by Santierul Naval Constanta
Malta Flag
Registered in Valletta, Malta
Call Sign: 9HOT3
IMO Nr.: 8513625
Class: DNV
GT/NT: 50,571/30,696
DWT: 88,850 MT on 14.022m
LOA: 228.15m, Beam: 43m

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Printed by BIMCO's idea

**ANNEX "B" (DETAILS OF CREW) TO**
**THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)**
**STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"**

Date of Agreement:
05/01/06
Details of Crew:

| Numbers | Rank | Nationality |
|---|---|---|
| 1 | MASTER | GREEK |
| 1 | CH.OFFICER | GREEK |
| 1 | 2ND MATE | RUSSIAN |
| 1 | 3ND MATE | RUSSIAN |
| 1 | CH. ENGINEER | GREEK |
| 1 | 2ND ENGINEER | GREEK |
| 1 | 3RD ENGINEER | RUSSIAN |
| 1 | 4TH ENGINEER | RUSSIAN |
| 1 | EL/CIAN | RUSSIAN |
| 1 | BOSUN | RUSSIAN |
| 1 | PUMPMAN | RUSSIAN |
| 1 | A.B. | RUSSIAN |
| 1 | A.B. | RUSSIAN |
| 1 | A.B. | RUSSIAN |
| 1 | MOTORMAN | RUSSIAN |
| 1 | MOTORMAN | RUSSIAN |
| 1 | FITTER | RUSSIAN |
| 1 | OILER | RUSSIAN |
| 1 | OILER | RUSSIAN |
| 1 | WIPER | RUSSIAN |
| 1 | ASS. STEWARD | RUSSIAN |
| 1 | ASS. STEWARD | RUSSIAN |
| 1 | SUP/TRY | RUSSIAN |
| 1 | COOK | RUSSIAN |

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



ANNEX "C" (BUDGET) TO
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

Date of Agreement:
05/01/06
Managers' Budget for the first year with effect from the Commencement Date of this Agreement:

| | |
|---|---|
| CREW WAGES | $1,050,000 |
| MARINE INSURANCES | $105,000 |
| P&I AND DEFENSE | $125,000 |
| STORES (DECK, ENGINE, CABIN, BONDED | $180,000 |
| REPAIRS / MAINTENANCE | $450,000 |
| CREW REPLACEMENT AND OTHER EXPENSES INCLUDING MEDICAL | $75,000 |
| VICTUALLING | $80,000 |
| FLAG EXPENSES | $15,000 |
| SPARES | $250,000 |
| RADIO | $20,000 |
| GENERAL SUPPLY EXPENSES, OPA 90, VESSELS INSPECTIONS | $20,000 |
| LUBRICANTS | $90,000 |
| MANAGEMENT | $250,000 |
| UNFORSEEN | $30,000 |
| | |
| TOTAL | $2,720,000 |

In addition to the above the Voyage expenses must be added.

| | |
|---|---|
| P&I DEDUCTIBLES | |
| CARGO CLAIMS | $ 15,650.00 EACH CARGO VOYAGE |
| CREW ILLNESS | $ 5,250.00 PER PORT |
| CREW INJURY/LOSS OF LIFE | $ 5,250.00 PER PERSON PER PORT |
| ALL OTHER CLAIMS | $ 5,250.00 |
| | |
| FD&D DEDUCTIBLES | $ 1,000.00 EACH DISPUTE |

INSURANCE POLICY COVER
    H&M INSURED VALUE    $ 18 MILLION
    INCREASED VALUE    $ 2 MILLION

DEDUCTIBLE ON H&M INS COVER ($ 18 MILLLION)  $ 100,000

VESSEL INSURED FOR WAR RISK WITH LLOYDS
    H&M INSURANCE    $ 18 MILLION
    INCREASED VALUE    $ 2 MILLION

All figures about and without guarantee

*Printed by BIMCO's idea*

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



ANNEX "D" (ASSOCIATED VESSELS) TO
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

NOTE: PARTIES SHOULD BE AWARE THAT BY COMPLETING THIS ANNEX "D"
THEY WILL BE SUBJECT TO THE PROVISIONS OF SUB-CLAUSE 18.1(i) OF THIS
AGREEMENT.

Date of Agreement:
05/01/06
Details of Associated Vessels:
MT Simphony M
Built 1983 by Asakava Ship Building Japan
Dwt: 10,885 MT
IMO Nr: 8216681

MT Monte Verde
Built 1980 by Hitachi Zosen
Dwt: 86,993 MT
IMO Nr: 7902960

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document



# EXHIBIT 3

*Monte Verde*

**THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)**

STANDARD SHIP MANAGEMENT AGREEMENT

CODE NAME: "SHIPMAN 98"

Part I

Approved by the International Ship Managers' Association (ISMA)

Approved by the Documentary Committee of The Japan Shipping Exchange Inc., Tokyo

Printed by BIMCO's idea

| | |
|---|---|
| 1. Date of Agreement<br>01/01/06 | |
| 2. Owners (name, place of registered office and law of registry) (Cl. 1)<br>Name<br>Balchill Trading S.A<br>Place of registered office<br>Valletta, Malta<br>Law of registry<br>Malta | 3. Managers (name, place of registered office and law of registry) (Cl. 1)<br>Name<br>Palomar Maritime Inc.<br>Place of registered office<br>Monrovia, 8 Broad Street, Liberia<br>Law of registry<br>Liberia |
| 4. Day and year of commencement of Agreement (Cl. 2)<br>01/01/06 | |
| 5. Crew Management (state "yes" or "no" as agreed) (Cl. 3.1)<br>YES | 6. Technical Management (state "yes" or "no" as agreed) (Cl. 3.2)<br>YES |
| 7. Commercial Management (state "yes" or "no" as agreed) (Cl. 3.3)<br>NO | 8. Insurance Arrangements (state "yes" or "no" as agreed) (Cl. 3.4)<br>YES |
| 9. Accounting Services (state "yes" or "no" as agreed) (Cl. 3.5)<br>YES | 10. Sale or purchase of the Vessel (state "yes" or "no" as agreed) (Cl. 3.6)<br>YES |
| 11. Provisions (state "yes" or "no" as agreed) (Cl. 3.7)<br>YES | 12. Bunkering (state "yes" or "no" as agreed) (Cl. 3.8)<br>NO , but cl. 3.8 to apply |
| 13. Chartering Services Period (only to be filled in if "yes" stated in Box 7) (Cl. 3.3(i))<br>NO | 14. Owners' Insurance (state alternative (i), (ii) or (iii) of Cl. 6.3)<br>(ii) |
| 15. Annual Management Fee (state annual amount) (Cl. 8.1)<br>US$250,000 | 16. Severance Costs (state maximum amount) (Cl. 8.4(ii))<br>All Severance costs as per Crew's Employment Agrement |
| 17. Day and year of termination of Agreement (Cl. 17)<br>1 year after commencement | 18. Law and Arbitration (state alternative 19.1, 19.2 or 19.3; if 19.3 place of arbitration must be stated) (Cl. 19)<br>19.1 |
| 19. Notices (state postal and cable address, telex and telefax number for serving notice and communication to the Owners) (Cl. 20)<br>Balchill Trading S.A<br>c/o Spectrum Trading and Shipping (STS) Inc.<br>31 Novinskiy Boulevard, Office 8068. Moscow<br>Russia 123242<br>Tel:+7 095 9814788 Fax:+7 095 9814789 Email: Tanker@spect.ru | 20. Notices (state postal and cable address, telex and telefax number for serving notice and communication to the Managers) (Cl. 20)<br>Palomar Maritime Inc.<br>Kantharou 1 & Akti Miaouli 75, 18537, Athens, Greece<br>Fax: +30 210 4280064, Tlx: 212939 REMI GR,<br>Email: Operations@Palomarmaritime.com |

It is mutually agreed between the party stated in Box 2 and the party stated in Box 3 that this Agreement consisting of PART I and PART II as well as Annexes "A" (Details of Vessel), "B" (Details of Crew), "C" (Budget) and "D" (Associated vessels) attached hereto, shall be performed subject to the conditions contained herein. In the event of a conflict of conditions, the provisions of PART I and Annexes "A", "B", "C" and "D" shall prevail over those of PART II to the extent of such conflict but no further.

| Signature(s) (Owners) | Signature(s) (Managers) |
|---|---|
| | |

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"SHIPMAN 98" Standard Ship Management Agreement                    5

**1. Definitions**    1
In this Agreement save where the context otherwise requires,    2
the following words and expressions shall have the meanings    3
hereby assigned to them,    4

"Owners" means the party identified in Box 2.    5
"Managers" means the party identified in Box 3.    6
"Vessel" means the vessel or vessels details of which are set    7
out in Annex "A" attached hereto.    8
"Crew" means the Master, officers and ratings of the numbers,    9
rank and nationality specified in Annex "B" attached hereto.    10
"Crew Support Costs" means all expenses of a general nature    11
which are not particularly referable to any individual vessel for    12
the time being managed by the Managers and which are incurred    13
by the Managers for the purpose of providing an efficient and    14
economic management service and, without prejudice to the    15
generality of the foregoing, shall include the cost of crew standby    16
pay, training schemes for officers and ratings, cadet training    17
schemes, sick pay, study pay, recruitment and interviews.    18
"Severance Costs" means the costs which the employers are    19
legally obliged to pay to or in respect of the Crew as a result of    20
the early termination of any employment contract for service on    21
the Vessel.    22
"Crew Insurances" means insurances against crew risks which    23
shall include but not be limited to death, sickness, repatriation,    24
injury, shipwreck unemployment indemnity and loss of personal    25
effects.    26
"Management Services" means the services specified in sub-    27
clauses 3.1 to 3.8 as indicated affirmatively in Boxes 5 to 12.    28
"ISM Code" means the International Management Code for the    29
Safe Operation of Ships and for Pollution Prevention as adopted    30
by the International Maritime Organization (IMO) by resolution    31
A.741(18) or any subsequent amendment thereto.    32
"STCW 95" means the International Convention on Standards    33
of Training, Certification and Watchkeeping for Seafarers, 1978,    34
as amended in 1995 or any subsequent amendment thereto.    35

**2. Appointment of Managers**    36
With effect from the day and year stated in Box 4 and continuing    37
unless and until terminated as provided herein, the Owners    38
hereby appoint the Managers and the Managers hereby agree    39
to act as the Managers of the Vessel.    40

**3. Basis of Agreement**    41
Subject to the terms and conditions herein provided, during the    42
period of this Agreement, the Managers shall carry out    43
Management Services in respect of the Vessel as agents for    44
and on behalf of the Owners. The Managers shall have authority    45
to take such actions as they may from time to time in their absolute    46
discretion consider to be necessary to enable them to perform    47
this Agreement in accordance with sound ship management    48
practice.    49

**3.1 Crew Management**    50
(only applicable if agreed according to Box 5)    51
The Managers shall provide suitably qualified Crew for the Vessel    52
as required by the Owners in accordance with the STCW 95    53
requirements, provision of which includes but is not limited to    54
the following functions:    55
(i)   selecting and engaging the Vessel's Crew, including payroll    56
arrangements, pension administration, and insurances for    57
the Crew other than those mentioned in Clause 6;    58
(ii)   ensuring that the applicable requirements of the law of the    59
flag of the Vessel are satisfied in respect of manning levels,    60
rank, qualification and certification of the Crew and    61
employment regulations including Crew's tax, social    62
insurance, discipline and other requirements;    63
(iii)   ensuring that all members of the Crew have passed a medical    64
examination with a qualified doctor certifying that they are fit    65

for the duties for which they are engaged and are in possession    66
of valid medical certificates issued in accordance with    67
appropriate flag State requirements. In the absence of    68
applicable flag State requirements the medical certificate shall    69
be dated not more than three months prior to the respective    70
Crew members leaving their country of domicile and    71
maintained for the duration of their service on board the Vessel;    72
(iv)   ensuring that the Crew shall have a command of the English    73
language of a sufficient standard to enable them to perform    74
their duties safely;    75
(v)   arranging transportation of the Crew, including repatriation;    76
(vi)   training of the Crew and supervising their efficiency;    77
(vii) conducting union negotiations;    78
(viii)operating the Managers' drug and alcohol policy unless    79
otherwise agreed.    80

**3.2 Technical Management**    81
(only applicable if agreed according to Box 6)    82
The Managers shall provide technical management which    83
includes, but is not limited to, the following functions:    84
(i)   provision of competent personnel to supervise the    85
maintenance and general efficiency of the Vessel;    86
(ii)   arrangement and supervision of dry dockings, repairs,    87
alterations and the upkeep of the Vessel to the standards    88
required by the Owners provided that the Managers shall    89
be entitled to incur the necessary expenditure to ensure    90
that the Vessel will comply with the law of the flag of the    91
Vessel and of the places where she trades, and all    92
requirements and recommendations of the classification    93
society;    94
(iii)   arrangement of the supply of necessary stores, spares and    95
lubricating oil;    96
(iv)   appointment of surveyors and technical consultants as the    97
Managers may consider from time to time to be necessary;    98
(v)   development, implementation and maintenance of a Safety    99
Management System (SMS) in accordance with the ISM    100
Code (see sub-clauses 4.2 and 5.3).    101
(vi)   all aspects of ISPS compliance   

**3.3 Commercial Management**    102
(only applicable if agreed according to Box 7)    103
The Managers shall provide the commercial operation of the    104
Vessel, as required by the Owners, which includes, but is not    105
limited to, the following functions:    106
(i) ~~providing chartering services in accordance with the Owners'~~    107
~~instructions which include, but are not limited to, seeking~~    108
~~and negotiating employment for the Vessel and the conclusion~~    109
~~(including the execution thereof) of charter parties or other~~    110
~~contracts relating to the employment of the Vessel. If such a~~    111
~~contract exceeds the period stated in Box 13, consent thereto~~    112
~~in writing shall first be obtained from the Owners;~~    113
(ii) ~~arranging of the proper payment to Owners or their nominees~~    114
~~of all hire and/or freight revenues or other moneys of~~    115
~~whatsoever nature to which Owners may be entitled arising~~    116
~~out of the employment of or otherwise in connection with the~~    117
~~Vessel;~~    118
(iii) ~~providing voyage estimates and accounts and calculating of~~    119
~~hire, freight, demurrage and/or despatch moneys due from~~    120
~~or due to the charterers of the Vessel;~~    121
(iv) ~~issuing of voyage instructions;~~    122
(v) ~~appointing agents;~~    123
(vi) ~~appointing stevedores;~~    124
(vii)~~arranging surveys associated with the commercial operation~~    125
~~of the Vessel.~~    126

**3.4 Insurance Arrangements**    127
(only applicable if agreed according to Box 8)    128
The Managers shall arrange insurances in accordance with    129
Clause 6, on ~~such the terms and conditions as the Owners shall~~    130
presently applicable to Sellers/Managers   
~~have instructed or as is regular regarding conditions~~    131

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"SHIPMAN 98" Standard Ship Management Agreement

Including,
insured values, deductibles and franchises, etc.   132

**3.5 Accounting Services**   133
*(only applicable if agreed according to Box 9)*   134
The Managers shall:   135
(i)   establish an accounting system which meets the   136
requirements of the Owners and provide regular accounting   137
services, supply regular reports and records, such accounting   138
services to be provided by Moore Stephens and all costs to be for
owner's account
(ii)   maintain the records of all costs and expenditure incurred   139
as well as data necessary or proper for the settlement of   140
accounts between the parties.   141

**3.6 Sale or Purchase of the Vessel**   142
*(only applicable if agreed according to Box 10)*   143
The Managers shall, in accordance with the Owners' instructions,   144
supervise the sale or purchase of the Vessel, including the   145
performance of any sale or purchase agreement, but not   146
negotiation of the same.   147

**3.7 Provisions** *(only applicable if agreed according to Box 11)*   148
The Managers shall arrange for the supply of provisions.   149

**3.8 Bunkering** *(only applicable if agreed according to Box 12)*   150
The Managers Owners shall arrange for the provision of bunker fuel   151
of the
quality specified by the Owners suitable for the type of the Vessel's   152
engine as required for the Vessel's trade.

**4. Managers' Obligations**   153
4.1 The Managers undertake to use their best endeavours to   154
provide the agreed Management Services as agents for and on   155
behalf of the Owners in accordance with sound ship management   156
practice and to protect and promote the interests of the Owners in   157
all matters relating to the provision of services hereunder.   158
Provided, however, that the Managers in the performance of their   159
management responsibilities under this Agreement shall be entitled   160
to have regard to their overall responsibility in relation to all vessels   161
as may from time to time be entrusted to their management and   162
in particular, but without prejudice to the generality of the foregoing,   163
the Managers shall be entitled to allocate available supplies,   164
manpower and services in such manner as in the prevailing   165
circumstances the Managers in their absolute discretion consider   166
to be fair and reasonable.   167
4.2 Where the Managers are providing Technical Management   168
in accordance with sub-clause 3.2, they shall procure that the   169
requirements of the law of the flag of the Vessel are satisfied and   170
they shall in particular be deemed to be the "Company" as defined   171
by the ISM Code, assuming the responsibility for the operation of   172
the Vessel and taking over the duties and responsibilities imposed   173
by the ISM Code when applicable.   174

**5. Owners' Obligations**   175
5.1 The Owners shall pay all sums due to the Managers punctually   176
in accordance with the terms of this Agreement.   177
5.2 Where the Managers are providing Technical Management   178
in accordance with sub-clause 3.2, the Owners shall:   179
(i)   procure that all officers and ratings supplied by them or on   180
their behalf comply with the requirements of STCW 95;   181
(ii)   instruct such officers and ratings to obey all reasonable orders   182
of the Managers in connection with the operation of the   183
Managers' safety management system.   184
5.3 Where the Managers are not providing Technical Management   185
in accordance with sub-clause 3.2, the Owners shall procure that   186
the requirements of the law of the flag of the Vessel are satisfied   187
and that they, or such other entity as may be appointed by them   188
and identified to the Managers, shall be deemed to be the   189
"Company" as defined by the ISM Code assuming the responsibility   190
for the operation of the Vessel and taking over the duties and   191

responsibilities imposed by the ISM Code when applicable.   192

**6. Insurance Policies**   193
The Owners shall procure, whether by instructing the Managers   194
under sub-clause 3.4 or otherwise, that throughout the period of   195
this Agreement:   196
6.1 at the Owners' expense, the Vessel is insured for not less   197
than her sound market value or entered for her full gross tonnage,   198
as the case may be for:   199
(i)   usual hull and machinery marine risks (including crew   200
negligence) and excess liabilities;   201
(ii)   protection and indemnity risks (including pollution risks and   202
Crew Insurances); and   203
(iii)   war risks (including protection and indemnity and crew risks)   204
in accordance with the best practice of prudent Owners of   205
vessels of a similar type to the Vessel, with first class insurance   206
companies, underwriters or associations ('the Owners'   207
Insurances");   208
6.2 all premiums and calls on the Owners' Insurances are paid   209
promptly by their due date.   210
6.3 the Owners' Insurances name the Managers and, subject   211
to underwriters' agreement, any third party designated by the   212
Managers as a joint assured, with full cover, with the Owners   213
obtaining cover in respect of each of the insurances specified in   214
sub-clause 6.1:   215
(i)   on terms whereby the Managers and any such third party   216
are liable in respect of premiums or calls arising in connection   217
with the Owners' insurances; or   218
(ii)   if reasonably obtainable, on terms such that neither the   219
Managers nor any such third party shall be under any   220
liability in respect of premiums or calls arising in connection   221
or   222
(iii)   on such other terms as may be agreed in writing.   223
Indicate alternative (i), (ii) or (iii) in Box 14. If Box 14 is left   224
blank then (i) applies.   225
6.4 written evidence is provided, to the reasonable satisfaction   226
of the Managers, of their compliance with their obligations under   227
Clause 6 within a reasonable time of the commencement of   228
the Agreement, and of each renewal date and, if specifically   229
requested, of each payment date of the Owners' Insurances.   230

**7. Income Collected and Expenses Paid on Behalf of Owners**   231
7.1 All moneys collected by the Managers under the terms of   232
this Agreement (other than moneys payable by the Owners to   233
the Managers) and any interest thereon shall be held to the   234
credit of the Owners in a separate bank account.   235
7.2 All expenses incurred by the Managers under the terms   236
of this Agreement on behalf of the Owners (including expenses   237
as provided in Clause 8) may be debited against the Owners   238
in the account referred to under sub-clause 7.1 but shall in any   239
event remain payable by the Owners to the Managers on   240
demand.   241

**8. Management Fee**   242
8.1 The Owners shall pay to the Managers for their services   243
as Managers under this Agreement an annual management   244
fee as stated in Box 15 which shall be payable by equal   245
Monthly - Instalments in advance, the first instalment being   246
payable on the commencement of this Agreement (see Clause   247
2 and Box 4) and subsequent instalments being payable every   248
month.   249
8.2 The management fee shall be subject to an annual review   250
on the anniversary date of the Agreement and the proposed   251
fee shall be presented in the annual budget referred to in sub-   252
clause 9.1.   253
8.3 The Managers shall, at no extra cost to the Owners, provide   254
their own office accommodation, office staff, facilities and   255
stationery. Without limiting the generality of Clause 7 the Owners   256

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"SHIPMAN 98" Standard Ship Management Agreement    3

shall reimburse the Managers for postage and communication
expenses, travelling expenses, and other out of pocket
expenses properly incurred by the Managers in pursuance of
the Management Services.    257, 258, 259, 260

8.4 In the event of the appointment of the Managers being
terminated by the Owners or the Managers in accordance with
the provisions of Clauses 17 and 18 other than by reason of
default by the Managers, or if the Vessel is lost, sold or otherwise
disposed of, the "management fee" payable to the Managers
according to the provisions of sub-clause 8.1, shall continue to
be payable for a further period of three calendar months as
from the termination date. In addition, provided that the
Managers provide Crew for the Vessel in accordance with sub-
clause 3.1:    261–270

(i)  the Owners shall continue to pay Crew Support Costs during
     the said further period of three calendar months and    271, 272
(ii) the Owners shall pay an equitable proportion of any all
     Severance Costs which may materialise are actually incurred,
     not exceeding
     the amount stated in Box 18.    273, 274, 275

8.5 If the Owners decide to lay-up the Vessel whilst this
Agreement remains in force and such lay-up lasts for more
than three months, an appropriate reduction of the management
fee for the period exceeding three months until one month
before the Vessel is again put into service shall be mutually
agreed between the parties.    276–281

8.6 Unless otherwise agreed in writing all discounts and
commissions obtained by the Managers in the course of the
management of the Vessel shall be credited to the Owners.    282, 283, 284

9. Budgets and Management of Funds    285

9.1 The Managers shall present to the Owners annually a
budget for the following twelve months in such form as the
Owners require. The budget for the first year hereof is set out
in Annex "C" hereto. Subsequent annual budgets shall be
prepared by the Managers and submitted to the Owners not
less than three months before the anniversary date of the
commencement of this Agreement (see Clause 2 and Box 4).    286–292

9.2 The Owners shall indicate to the Managers their acceptance
and approval of the annual budget within one month week of
presentation and in the absence of any such indication the
Managers shall be entitled to assume that the Owners have
accepted the proposed budget.    293–297

9.3 Following the agreement of the budget, the Managers shall
prepare and present to the Owners their estimate of the working
capital requirement of the Vessel and the Managers shall each
month up-date this estimate. The owners shall provide an amount
of US$250,000 to the Managers for the working capital
requirements of the vessel, which amount to be deposited in the
Managers' account. Based thereon, the Managers shall
each month request the Owners in writing for the funds required to
make up any deficit of the US$250,000 working capital deposit, as
when required,    298–302

to run the Vessel for the ensuing month, including the payment
of any occasional or extraordinary item of expenditure, such as
emergency repair costs, additional insurance premiums, bunkers
or provisions. Such funds shall be received by the Managers
within ten running three banking days after the receipt by the
Owners of the
Managers' written or fax or telex or e-mail request and shall be held
to the credit of the
Owners in a separate bank account.    303–309

9.4 The Managers shall produce a comparison between
budgeted and actual income and expenditure of the Vessel in
such form as required by the Owners monthly or at such other
intervals as mutually agreed.    310, 311, 312, 313

9.5 Notwithstanding anything contained herein to the contrary,
the Managers shall in no circumstances be required to use or
commit their own funds to finance the provision of the
Management Services.    314, 315, 316, 317

10. Managers' Right to Sub-Contract    318

The Managers shall not have the right to sub-contract any of
their obligations hereunder, including those mentioned in sub-
clause 3.1, without the prior written consent of the Owners which
shall not be unreasonably withheld. In the event of such a sub-
contract the Managers shall remain fully liable for the due
performance of their obligations under this Agreement.    319–324

11. Responsibilities    325

11.1 Force Majeure - Neither the Owners nor the Managers
shall be under any liability for any failure to perform any of their
obligations hereunder by reason of any cause whatsoever of
any nature or kind beyond their reasonable control.    326, 327, 328, 329

11.2 Liability to Owners - (i) Without prejudice to sub-clause
11.1, the Managers shall be under no liability whatsoever to the
Owners for any loss, damage, delay or expense of whatsoever
nature, whether direct or indirect, (including but not limited to
loss of profit arising out of or in connection with detention of or
delay to the Vessel) and howsoever arising in the course of
performance of the Management Services UNLESS same is
proved to have resulted solely from the negligence, gross
negligence or wilful default of the Managers or their employees,
or agents or sub-contractors employed by them in connection
with the Vessel, in which case (save where loss, damage, delay
or expense has resulted from the Managers' personal act or
omission committed with the intent to cause same or recklessly
and with knowledge that such loss, damage, delay or expense
would probably result) the Managers' liability for each incident
or series of incidents giving rise to a claim or claims shall never
exceed a total of ten times the annual management fee payable
hereunder.    330–347

(ii) Notwithstanding anything that may appear to the contrary in
this Agreement, the Managers shall not be liable for any of the
actions of the Crew, even if such actions are negligent, grossly
negligent or wilful, except only to the extent that they are shown
to have resulted from a failure by the Managers to discharge
their obligations under sub-clause 3.1, in which case their liability
shall be limited in accordance with the terms of this Clause 11.    348–354

11.3 Indemnity - Except to the extent and solely for the amount
therein set out that the Managers would be liable under sub-
clause 11.2, the Owners hereby undertake to keep the Managers
and their employees, agents and sub-contractors indemnified
and to hold them harmless against all actions, proceedings,
claims, demands or liabilities whatsoever or howsoever arising
which may be brought against them or incurred or suffered by
them arising out of or in connection with the performance of the
Agreement, and against and in respect of all costs, losses,
damages and expenses (including legal costs and expenses on
a full indemnity basis) which the Managers may suffer or incur
(either directly or indirectly) in the course of the performance of
this Agreement.    355–367

11.4 "Himalaya" - It is hereby expressly agreed that no
employee or agent of the Managers (including every sub-
contractor from time to time employed by the Managers) shall in
any circumstances whatsoever be under any liability whatsoever
to the Owners for any loss, damage or delay of whatsoever kind
arising or resulting directly or indirectly from any act, neglect or
default on his part while acting in the course of or in connection
with his employment and, without prejudice to the generality of
the foregoing provisions in this Clause 11, every exemption,
limitation, condition and liberty herein contained and every right,
exemption from liability, defence and immunity of whatsoever
nature applicable to the Managers or to which the Managers are
entitled hereunder shall also be available and shall extend to
protect every such employee or agent of the Managers acting
as aforesaid and for the purpose of all the foregoing provisions
of this Clause 11 the Managers are or shall be deemed to be
acting as agent or trustee on behalf of and for the benefit of all    368–384

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"SHIPMAN 98" Standard Ship Management Agreement

persons who are or might be their servants or agents from time
to time (Including sub-contractors as aforesaid) and all such
persons shall to this extent be or be deemed to be parties to this
Agreement.

**12.Documentation**
Where the Managers are providing Technical Management in
accordance with sub-clause 3.2 and/or Crew Management in
accordance with sub-clause 3.1, they shall make available,
upon Owners' request, all documentation and records related
to the Safety Management System (SMS) and/or the Crew
which the Owners need in order to demonstrate compliance
with the ISM Code and STCW 95 or to defend a claim against
a third party.

**13.General Administration**
13.1  The Managers shall handle and settle all claims arising
out of the Management Services hereunder and keep the Owners
informed regarding any incident of which the Managers become
aware which gives or may give rise to claims or disputes involving
third parties.
13.2  The Managers shall, as instructed by the Owners, bring
or defend actions, suits or proceedings in connection with matters
entrusted to the Managers according to this Agreement.
13.3  The Managers shall also have power to obtain legal or
technical or other outside expert advice in relation to the handling
and settlement of claims and disputes or all other matters
affecting the interests of the Owners in respect of the Vessel.
13.4  The Owners shall arrange for the provision of any
necessary guarantee bond or other security.
13.5  Any costs reasonably incurred by the Managers in
carrying out their obligations according to Clause 13 shall be
reimbursed by the Owners.

**14.Auditing**
The Managers shall at all times maintain and keep true and
correct accounts and shall make the same available for inspection
and auditing by the Owners at such times as may be mutually
agreed. On the termination, for whatever reasons, of this
Agreement, the Managers shall release to the Owners, if so
requested, the originals where possible, or otherwise certified
copies, of all such accounts and all documents specifically relating
to the Vessel and her accounts.

**15.Inspection of Vessel**
The Owners shall have the right at any time after giving
reasonable notice to the Managers to inspect the Vessel for any
reason they consider necessary.

**16.Compliance with Laws and Regulations**
The Managers will not do or permit to be done anything which
might cause any breach or infringement of the laws and
regulations of the Vessel's flag, or of the places where she trades.

**17.Duration of the Agreement**
This Agreement shall come into effect on the day and year stated
in Box 4 and shall continue until the date stated in Box 17.
However either party to have the right to terminate this agreement
by
~~Thereafter it shall continue until terminated by either party giving~~
to the other notice in writing, in which event the Agreement shall
terminate upon the expiration of a period of ~~two~~ three months from
the
date upon which such notice was given.

**18.Termination**
18.1  Owners' default
(i)  The Managers shall be entitled to terminate the Agreement
with immediate effect by notice in writing if any moneys
payable by the Owners under this Agreement and/or the

owners of any associated vessel, details of which are listed
in Annex "D", shall not have been received in the Managers'
nominated account within ten-five running days of receipt by
the Owners of the Managers written request or if the Vessel
is repossessed by the Mortgagees.
(ii)  If the Owners:
(a)  fail to meet their obligations under sub-clauses 5.2
and 5.3 of this Agreement for any reason within their
control, or
(b)  proceed with the employment of or continue to employ
the Vessel in the carriage of contraband, blockade
running, or in an unlawful trade, or on a voyage which
in the reasonable opinion of the Managers is unduly
hazardous or improper,
the Managers may give notice of the default to the Owners,
requiring them to remedy it as soon as practically possible.
In the event that the Owners fail to remedy it within a
reasonable time to the satisfaction of the Managers, the
Managers shall be entitled to terminate the Agreement
with immediate effect by notice in writing.
18.2  Managers' Default
If the Managers fail to meet their obligations under Clauses 3
and 4 of this Agreement for any reason within the control of the
Managers, the Owners may give notice to the Managers of the
default, requiring them to remedy it as soon as practically
possible. In the event that the Managers fail to remedy it within a
reasonable time to the satisfaction of the Owners, the Owners
shall be entitled to terminate the Agreement with immediate effect
by notice in writing.
18.3  Extraordinary Termination
This Agreement shall be deemed to be terminated in the case of
the sale of the Vessel or if the Vessel becomes a total loss or is
declared as or becomes a constructive or compromised or arranged total
loss or is requisitioned.
18.4  For the purpose of sub-clause 18.3 hereof
(i)  the date upon which the Vessel is to be treated as having
been sold or otherwise disposed of shall be the date on
which the Owners cease to be registered as Owners of
the Vessel;
(ii)  the Vessel shall not be deemed to be lost unless either
she has become an actual total loss or agreement has
been reached with her underwriters in respect of her
constructive, compromised or arranged total loss or if such
agreement with her underwriters is not reached it is
adjudged by a competent tribunal that a constructive loss
of the Vessel has occurred.
18.5  This Agreement shall terminate forthwith in the event of
an order being made or resolution passed for the winding up,
dissolution, liquidation or bankruptcy of either party (otherwise
than for the purpose of reconstruction or amalgamation) or if a
receiver is appointed, or if it suspends payment, ceases to carry
on business or makes any special arrangement or composition
with its creditors.
18.6  The termination of this Agreement shall be without
prejudice to all rights accrued due between the parties prior to
the date of termination.

**19.Law and Arbitration**
19.1  This Agreement shall be governed by and construed in
accordance with English law and any dispute arising out of or
in connection with this Agreement shall be referred to arbitration
in London in accordance with the Arbitration Act 1996 or
any statutory modification or re-enactment thereof save to
the extent necessary to give effect to the provisions of this
Clause.
The arbitration shall be conducted in accordance with the
London Maritime Arbitrators Association (LMAA) Terms
current at the time when the arbitration proceedings are
commenced.

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II
## "SHIPMAN 98" Standard Ship Management Agreement

The reference shall be to three arbitrators. A party wishing | 513
to refer a dispute to arbitration shall appoint its arbitrator | 514
and send notice of such appointment in writing to the other | 515
party requiring the other party to appoint its own arbitrator | 516
within 14 calendar days of that notice and stating that it will | 517
appoint its arbitrator as sole arbitrator unless the other party | 518
appoints its own arbitrator and gives notice that it has done | 519
so within the 14 days specified. If the other party does not | 520
appoint its own arbitrator and give notice that it has done so | 521
within the 14 days specified, the party referring a dispute to | 522
arbitration may, without the requirement of any further prior | 523
notice to the other party, appoint its arbitrator as sole | 524
arbitrator and shall advise the other party accordingly. The | 525
award of a sole arbitrator shall be binding on both parties | 526
as if he had been appointed by agreement. | 527
Nothing herein shall prevent the parties agreeing in writing | 528
to vary these provisions to provide for the appointment of a | 529
sole arbitrator. | 530
In cases where neither the claim nor any counterclaim | 531
exceeds the sum of USD50,000 (or such other sum as the | 532
parties may agree) the arbitration shall be conducted in | 533
accordance with the LMAA Small Claims Procedure current | 534
at the time when the arbitration proceedings are commenced. | 535
~~19.2 This Agreement shall be governed by and construed~~ | 536
~~in accordance with Title 9 of the United States Code and~~ | 537
~~the Maritime Law of the United States and any dispute~~ | 538
~~arising out of or in connection with this Agreement shall be~~ | 539
~~referred to three persons at New York, one to be appointed~~ | 540
~~by each of the parties hereto, and the third by the two so~~ | 541
~~chosen; their decision or that of any two of them shall be~~ | 542

~~final, and for the purposes of enforcing any award,~~ | 543
~~judgement may be entered on an award by any court of~~ | 544
~~competent jurisdiction. The proceedings shall be conducted~~ | 545
~~in accordance with the rules of the Society of Maritime~~ | 546
~~Arbitrators, Inc.~~ | 547
~~In cases where neither the claim nor any counterclaim~~ | 548
~~exceeds the sum of USD50,000 (or such other sum as the~~ | 549
~~parties may agree) the arbitration shall be conducted in~~ | 550
~~accordance with the Shortened Arbitration Procedure of the~~ | 551
~~Society of Maritime Arbitrators, Inc. current at the time when~~ | 552
~~the arbitration proceedings are commenced.~~ | 553
~~19.3 This Agreement shall be governed by and construed~~ | 554
~~in accordance with the laws of the place mutually agreed by~~ | 555
~~the parties and any dispute arising out of or in connection~~ | 556
~~with this Agreement shall be referred to arbitration at a~~ | 557
~~mutually agreed place, subject to the procedures applicable~~ | 558
~~there.~~ | 559
19.4 If Box 18 in Part I is not appropriately filled in, sub- | 560
clause 19.1 of this Clause shall apply. | 561

*Note: 19.1, 19.2 and 19.3 are alternatives; indicate* | 562
*alternative agreed in Box 18.* | 563

**20.Notices** | 564
20.1 Any notice to be given by either party to the other | 565
party shall be in writing and may be sent by fax, telex, | 566
registered or recorded mail or by personal service. | 567
20.2 The address of the Parties for service of such | 568
communication shall be as stated in Boxes 19 and 20, | 569
respectively. | 570

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**ANNEX "A" (DETAILS OF VESSEL OR VESSELS) TO
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"**

Date of Agreement:
**01/01/06**
Name of Vessel(s):
**MT Monte Verde**
Particulars of Vessel(s):
**Built: 1980, by Hitachi Zosen
Greek Flag
Registered in Andros, Greece
Call Sign: SXJZ
IMO Nr.: 7902960
Class: Bureau Veritas
GT/NT: 52,743/21,985
DWT: 86,993 MT on 12.777m
LOA: 243.5m, Beam: 42m**

Printed by BIMCO's idea

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

ANNEX "B" (DETAILS OF CREW) TO
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

Date of Agreement:
01/01/06
Details of Crew:

| Numbers | Rank | Nationality |
|---|---|---|
| 1 | MASTER | GREEK |
| 1 | CH.OFFICER | GREEK |
| 1 | 2ND MATE | ROMANIAN |
| 2 | 2ND MATE | UKRANIAN |
| 1 | CH. ENGINEER | GREEK |
| 1 | 2ND ENGINEER | GREEK |
| 1 | 3RD ENGINEER | RUSSIAN |
| 1 | 3RD ENGINEER | GREEK |
| 1 | EL/CIAN | RUSSIAN |
| 1 | BOSUN | EGYPTIAN |
| 1 | PUMPMAN | EGYPTIAN |
| 2 | A.B. | RUSSIAN |
| 2 | A.B. | UKRANIAN |
| 3 | A.B. | ROMANIAN |
| 1 | A.B. | SRI LANKA |
| 1 | FITTER | UKRANIAN |
| 1 | OILER | RUSSIAN |
| 2 | OILER | ROMANIAN |
| 1 | WIPER | ROMANIAN |
| 2 | ASS. STEWARD | UKRANIAN |
| 1 | ASS. STEWARD | ROMANIAN |
| 1 | SUP/TRY | GREEK |
| 1 | COOK | RUSSIAN |

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## ANNEX "C" (BUDGET) TO
## THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
## STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

Date of Agreement:
01/01/06
Managers' Budget for the first year with effect from the Commencement Date of this Agreement:

| | |
|---|---|
| CREW WAGES | $1,100,000 |
| MARINE INSURANCES | $135,000 |
| P&I AND DEFENSE | $150,000 |
| STORES (DECK, ENGINE, CABIN, BONDED | $160,000 |
| REPAIRS / MAINTENANCE | $250,000 |
| CREW REPLACEMENT AND OTHER EXPENSES INCLUDING MEDICAL | $30,000 |
| VICTUALLING | $80,000 |
| FLAG EXPENSES | $35,000 |
| SPARES | $100,000 |
| RADIO | $20,000 |
| GENERAL SUPPLY EXPENSES, OPA 90, VESSELS INSPECTIONS | $20,000 |
| LUBRICANTS | $60,000 |
| MANAGEMENT | $250,000 |
| UNFORSEEN | $30,000 |
| | |
| TOTAL | $2,420,000 |

In addition to the above the Voyage expenses must be added.

**P&I DEDUCTIBLES**
CARGO CLAIMS               $ 15,650.00 EACH CARGO VOYAGE
CREW ILLNESS               $  5,250.00 PER PORT
CREW INJURY/LOSS OF LIFE   $  5,250.00 PER PERSON PER PORT
ALL OTHER CLAIMS    $ 5,250.00 ANY ONE ACCIDENT OR OCCURRENCE

**FD&D DEDUCTIBLES**        $ 1,000.00 EACH DISPUTE

**INSURANCE POLICY COVER**
    H&M INSURED VALUE     $ 10 MILLION
    INCREASED VALUE       $ 2 MILLION

**DEDUCTIBLE ON H&M INS COVER ($ 10 MILLLION)  $ 125,000**

**VESSEL INSURED FOR WAR RISK WITH LLOYDS**
    H&M INSURANCE         $ 10MILLION
    INCREASED VALUE       $  2 MILLION

All figures about and without guarantee

Printed by BIMCO's Idea

This document is a computer generated SHIPMAN 98 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.